KEVIN A. DARBY, NVSB# 7670
TRICIA M. DARBY, NVSB# 7956
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada 89519
Telephone: 775.322.1237
Facsimile: 775.996.7290
kevin@darbylawpractice.com

Counsel for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | CASE NO.:  BK-N-15-50211-gwz |
| | Chapter 11 |
| EMPIRE RANCH GOLF COURSE, LLC, | |
| Debtor. | **MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363** |
| | Hearing Date:  TBD |
| | Hearing Time:  OST Requested |

Debtor and Debtor in Possession, EMPIRE RANCH GOLF COURSE, LLC, (the "Debtor") by and through counsel, KEVIN A. DARBY, ESQ. of Darby Law Practice, LTD., moves this court for the entry of an order approving the sale of all assets owned by Debtor (the "Motion"), subject to overbid at the hearing on the Motion. This Motion is made pursuant to 11 U.S.C. §363 and Fed. R. Bankr. P. 2002(a)(2) and 6004 and is supported by the declaration of Dwight C. Millard (the "Millard Declaration") and the following points and authorities. A proposed order approving the sale is attached hereto as Exhibit 1.

///

///

**POINTS AND AUTHORITIES**

**I.      SUMMARY OF PROPOSED SALE**

This Motion seeks an order approving the sale of the Debtor's Assets, as defined below, to **CARSON CREEK RESORT, INC.** ("CCR") pursuant to the terms of the Purchase Agreement attached hereto to the Millard Declaration as Exhibit 1 (the "Purchase Agreement") for cash in the amount of **$3,500,000.00**, or to any higher bidder at the hearing on this Motion.

In addition, in the event this sale is terminated by CCR prior to close of escrow, Debtor's seek authority of this Court to file a motion to sell Debtor's assets to back-up purchase offer, or file a plan of reorganization, by no later than September 18, 2015.

**II.     FACTUAL BACKGROUND**

1. On February 20, 2015, Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.  Debtor owns approximately 221-acres of real property on which it operates Empire Ranch Golf Course, a 27-hole golf course, restaurant, clubhouse and pro shop in Carson City, Nevada.  *See Declaration of Dwight C. Millard, ¶ 2.*

2. The Debtor's assets used in the operation of its business ("Debtor's Assets") consist of the following:

> a. Debtor's Real Property: 1875 Fair Way Drive, Carson City, Nevada.  Debtor's real property consists of approximately 221-acres of real property, plus certain contractual rights to receive 1385 acre feet of effluent water from Carson City per year.
>
> b. Debtor's Personal Property: Debtor's personal property consists of: 110 golf carts; inventory for golf course and restaurant; miscellaneous equipment and tools to operate restaurant and to maintain golf course.

*See Declaration of Dwight C. Millard, ¶ 3.*  This Motion seeks the Court's approval of the sale of the Debtor's Assets to CCR pursuant to the terms of the Purchase Agreement.

3. The secured debts against Debtor's Real Property ("Debtor's Secured Debts") consist of the following:

| Secured Creditor | Est. Claim Amount | Priority |
|---|---|---|
| GSR Investments, LLC | $1,180,000 | 1st |
| Patricia Thompson/Stanton Park Development | $2,026,804 | 2nd |
| Nila Loucks | $207,625 | 3rd |
| George Barger Trust | $200,000 | 4th |
| Leona White/Ruth Hughes | $166,000 | 5th |
| Internal Revenue Service | $64,748 | 6th |
| **Total:** | **$3,845,177** | |

*See Declaration of Dwight C. Millard, ¶ 4.*

4.  On July 30, 2015, Debtor accepted an offer to purchase/sell the Debtor's Assets to CCR for $3,500,000. *See Declaration of Dwight C. Millard, ¶ 5.* A copy of the signed Purchase Agreement is attached to the Declaration of Dwight C. Millard as Exhibit 1.

5.  CCR is not an insider of the Debtor or otherwise related or affiliated with the Debtor in any way. *See Declaration of Dwight C. Millard, ¶ 6.*

6.  In addition to the offer from CCR, Debtor has a back up offer to purchase the Debtor's Assets from Birdies To Bogies, LLC for $3,200,000. Debtor was also contacted by an interested party from Salt Lake City, Utah, who intends to visit the golf course and may present a back-up offer to purchase Debtor's Assets.

### III.     PROPOSED SALE TERMS

6.  CCR has offered to purchase Debtor's Assets for a total purchase price of $3,500,000 pursuant to the terms of the Purchase Agreement. CCR will deposit a non-refundable $100,000 earnest money deposit with First Centennial Title Company in Carson City, Nevada, on or before August 9, 2015. Pursuant to the Purchase Agreement, the sale of the Debtor's Assets to CCR shall close on or before August 31, 2015. *See Declaration of Dwight C. Millard, ¶ 7.*

7. CCR is not assuming any liability or responsibility for claims against Debtor. *See Declaration of Dwight C. Millard, ¶8.*

8. CCR is acquiring the Debtor's Assets "as is" that is, without warranties or representations, except as otherwise provided in the Purchase Agreement. *See Declaration of Dwight C. Millard, ¶ 9.*

///

///

9. The Debtor's Assets shall be acquired by CCR free and clear of any lien, claim or encumbrance. *See Declaration of Dwight C. Millard, ¶ 10.*

10. Debtor estimates the seller's costs of sale, including title/escrow fees and transfer tax, will be $20,000. There are no real estate agents or brokers participating in this sale, saving the Debtor substantial sums in real estate sale commissions   Thus, projected the net proceeds from the sale shall be approximately $3,480,000, which shall be disbursed directly from escrow as follows:

**$50,000** – Paid to Debtor's Counsel's Firm Trust Account to be used to pay administrative expenses in this case, including Legal Fees, US Trustee's Fees and Accounting Fees.[1]

**$1,180,000** – to GSR Investments, LLC on account of its first priority lien;

**$2,026,804** – to Patricia Thompson ($594,220) and Stanton Park Development, Inc ($1,432,589) on account of their second priority lien;

**$207,625 –** to Nila Loucks on account of her third priority lien;

**$All remaining net sale proceeds** (approximately $18,571) – to Christine Millard, Trustee of the Barger Family Trust, on account of its fourth priority lien.

## IV.    LEGAL ARGUMENT

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   Courts have uniformly held that approval of a proposed sale of a debtor's assets outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that sound business reasons justify the transaction. See Committee of Equity Security Holders v. Lionel Corp, (In re Lionel Corp.), 722 F.2d 1063-1069-71 (2d Cir. 1983); Walter Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (stating "[u]nder Section 363, the debtor in possession can sell property of the estate outside the ordinary course of business if he has an articulated business justification.") (citations omitted); Stephens Indus. Inc. v. McClung,

---

[1] Debtor estimates US Trustee's fees of $10,400 on account of the sale. Debtor estimates legal fees from this case totaling $35,000 and accounting fees of $4,600 to prepare final tax returns accounting for the sale.

789 F.2d 386, 389-90 (6th Cir. 1986) (stating "a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under §363(b)(1) when a sound business purpose dictates such action"); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (finding elements necessary for approval of a 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

Once the Debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re. Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal quotations omitted). The Debtor's business judgment "should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." In re Aeravox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (internal citations omitted).

Here, the Debtor seeks to sell the Debtor's Assets for $3,500,000. Debtor has not operated profitably for many years. The risk of a pending foreclosure sale by the first priority deed of trust holder, GSR Investments, LLC, forced the filing of this bankruptcy to save Debtor's assets.

Debtor believes the proposed purchase price of $3,500,000 maximizes the value of Debtor's assets and notes the sale is for substantially greater than the appraised value of the property as a golf course.

Based upon the foregoing, the Debtor believes the sale of the Debtor's Assets is fair, equitable and a sound business decision. Debtor further believes the sale is in the best interests of the creditors and the estate and that the estate would be prejudiced if the Debtor does not sell the Debtor's Assets to CCR. Debtor believes this is a rare opportunity and does not anticipate another offer that affords the same benefits as the offer from CCR.

The Debtor must sell its assets immediately. Absent a sale, there is a risk Debtor's first priority lien holder may be permitted to foreclose.

The Debtor proposes to sell the Debtor's Assets free and clear of all liens, claims, and encumbrances pursuant to Section 363(f). This sale qualifies for the protection of Section 363(f).

The sale pays all creditors with secured claims recognized under 11 U.S.C. §506.

Section 363(m) provides protection to CCR and Debtor's Assets from a later appeal seeking to unwind the sale. In this case, the certainty of the sale of clear title is essential to CCR.

The sale qualifies for the Section 363(m) protections, as per the Ninth Circuit Bankruptcy Appellate Panel standards set forth in In re PW, LLC, 391 B.R. 25, at 35-37 (B.A.P. 9th Cir. 2008). CCR is a good faith purchaser with respect to Debtor's Assets, as that term is used in section 363(m) of the Bankruptcy Code. The sale to CCR was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion, and CCR therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Debtor's Assets. Neither Debtor nor CCR have engaged in any conduct that would cause or permit the sale to be voided under section 363(n) of the Bankruptcy Code.

A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code. With Court approval, the Debtor may sell, transfer and assign its assets free and clear of all liens, claims, interests and/or encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code. As a condition to purchasing Debtor's Assets, CCR requires that (a) Debtor's Assets be sold free and clear of all liens, claims, encumbrances, options, rights of first refusal and other interests; and (b) the CCR shall have no liability whatsoever for any obligations of or claims (including without limitation as defined in section 101(5) of the Bankruptcy Code) against CCR.

## V.  CONCLUSION

Based on the foregoing, the Debtor respectfully requests this Court approve the sale of the Debtor's Assets to CCR, according to the terms of the Asset Purchase Agreement. Debtor further requests this Court waive the 14-day stay on or before the order granting this Motion under Fed. R. Bankr. P. 6004(h), so the sale may close before August 31, 2015, as required by the Purchase Agreement.

///

///

///

In addition, in the event the sale is terminated for any reason, Debtor seeks authority to file a motion to sell Debtor's assets to pursuant to either the existing or a new back-up purchase offer, or file a plan of reorganization, by no later than September 18, 2015.

DATED this 5th day of August, 2015.

           DARBY LAW PRACTICE, LTD.

           By: ____*/s/ Kevin A. Darby*_____
             KEVIN A. DARBY, ESQ.
           Reorganization Counsel for Debtor and
           Debtor in Possession

**<u>EXHIBIT 1</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>EXHIBIT 1</u>**

KEVIN A. DARBY, NVSB# 7670
TRICIA M. DARBY, NVSB# 7956
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada  89519
Telephone: 775.322.1237
Facsimile:  775.996.7290
kevin@darbylawpractice.com

Counsel for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | CASE NO.:   BK-N-15-50211-gwz |
| | Chapter 11 |
| EMPIRE RANCH GOLF COURSE, LLC, | |
| | **ORDER GRANTING MOTION TO SELL** |
| Debtor. | **ASSETS FREE AND CLEAR OF LIENS** |
| | **PURSUANT TO 11 U.S.C. §363** |
| | |
| | Hearing Date:  TBD |
| | Hearing Time:  OST Requested |

Upon the *Motion To Sell Assets Free and Clear of Liens Pursuant To 11 U.S.C. §363*, filed July 31, 2015 (the "Motion") by Debtor EMPIRE RANCH GOLF COURSE, LLC, a (the "Debtor"), in which Debtor seeks an order under 11 U.S.C. §363 and Fed. R. Bankr. P. 2002, 6004 and 9014 approving the sale of all of Debtor's assets free and clear of liens, claims, and encumbrances to CARSON CREEK RESORT, INC. ("CCR"); and the Motion having come before this Court on a duly noticed hearing, and having considered all objections and arguments

for and against the Motion, and good cause appearing; and finding:[1]

1. Debtor's Motion seeks an order approving the sale of certain assets owned by the Debtor to CCR, pursuant to the terms of the Purchase Agreement attached to the Declaration of Dwight Millard as Exhibit 1, free and clear of all liens, claims and encumbrances, for cash in the amount of **$3,500,000.00,** to be paid at close of escrow on or before August 30, 2015  The assets being sold to CCR are identified in detail in the Purchase Agreement and include, but are not limited to, the following (the "Debtor's Assets"):

> a. <u>Debtor's Real Property</u>: 1875 Fair Way Drive, Carson City, Nevada.  Debtor's real property consists of approximately 221-acres of real property, plus certain contractual rights to receive 1385 acre feet of effluent water from Carson City per year.

> b. <u>Debtor's Personal Property</u>: Debtor's personal property consists of: 110 golf carts; inventory for golf course and restaurant; miscellaneous equipment and tools to operate restaurant and to maintain golf course.

2. CCR is not an insider of the Debtor or otherwise related or affiliated with the Debtor in any way.

3. CCR is acquiring the Debtor's Assets "as is", without warranties or representations, except as provided in the Purchase Agreement.

4. The sale of Debtor's Assets to CCR is free and clear of any lien, claim or encumbrance pursuant to 11 U.S.C. §363(f).

5. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

6. The Debtor is the sole and lawful owner of Debtor's Assets to be sold to CCR.

7. No qualifying or competing bids were submitted.

8. The offer of CCR to purchase the Debtor's Assets is the highest and best offer received by the Debtor.  The purchase price to be paid by CCR is fair and reasonable market value for the Debtor's Assets.

9. CCR is a good faith purchaser with respect to Debtor's Assets, within the meaning of section 363(m) of the Bankruptcy Code. The sale to CCR was negotiated, proposed and entered

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

into by the parties in good faith, from arm's length bargaining positions and without collusion, and CCR therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the assets. Neither the Debtor nor CCR have engaged in any conduct that would cause or permit the sale to be voided under Section 363(n) of the Bankruptcy Code.

10. CCR shall not assume or become liable for any pre-petition liens, claims, interests and/or encumbrances relating to Debtor's Assets by the Debtor. Any valid and enforceable liens, claims, interests and/or encumbrances shall attach to the proceeds of the sale with the same priority, validity, and enforceability as they had immediately before the closing of the sale.

11. The Debtor has articulated sound business reasons for selling the Assets as set forth in the Motion outside of a chapter 11 plan, and it is a reasonable exercise of the Debtor's business judgment to execute, deliver and consummate the sale with CCR and consummate the transactions contemplated by the Motion and as set forth in this Order.

12. The terms and conditions of the sale, including the total consideration to be realized by the Debtor, are fair and reasonable, and the transactions contemplated by the Motion, as approved by this Order, are in the best interests of the Debtor, its creditors and the estate.

13. A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code. The Debtor may sell, transfer and assign Debtor's Assets free and clear of all liens, claims, interests and/or encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code.

14. The transfer of Debtor's Assets to CCR is or will be a legal, valid and effective transfer of Debtor's Assets, and will vest CCR with all right, title and interest in and to Debtor's Assets, free and clear of all liens, claims, interests and/or encumbrances.

15. The requirements of sections 363(b) and 363(f) of the Bankruptcy Code and any other applicable law relating to the sale of Debtor's Assets have been satisfied.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**A. SALE OF ASSETS APPROVED; TRANSACTIONS AUTHORIZED.**

16. The Motion is GRANTED.

17. All objections to the Motion or the relief requested therein that have not been

withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits and denied.

18. The Motion, the Purchase Agreement and the transactions contemplated thereby are approved pursuant to Section 363(b) and (f) as modified by this Order, and the Debtor is hereby authorized and empowered to perform their obligations under the Purchase Agreement and to act as necessary to effectuate the sale without further corporate authorization or Order of this Court.

**B. TRANSFER OF THE ASSETS TO CCR.**

19. The transfer of Debtor's Assets to CCR constitutes a legal, valid and effective transfer and shall vest CCR with all right, title and interest of the Debtor in and to Debtor's Assets free and clear of all claims, liens and encumbrances.

20. After paying all of seller's costs of sale, including title/escrow fees and transfer tax, the net proceeds from the sale shall $3,480,000, which shall be disbursed directly from escrow as follows:

1) **$50,000** – Paid to Darby Law Practice, LTD IOLTA Trust Account to be used to pay administrative expenses in this case, including Legal Fees, US Trustee's Fees and Accounting Fees.

2) **$1,180,000** – Paid to GSR Investments, LLC on account of its first priority lien;

3) **$2,026,804** – Paid to Patricia Thompson ($594,220) and Stanton Park Development, Inc ($1,432,589) on account of their second priority lien;

4) **$207,625 –** Paid to Nila Loucks on account of her third priority lien;

5) **All remaining net sale proceeds** (approximately $18,571) – Paid to Christine Millard, Trustee of the Barger Family Trust, on account of its fourth priority lien.

21. This Order shall be binding upon, and shall inure to the benefit of, the Debtor and CCR and their respective successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor or any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 11.

22. The provisions of this Order authorizing the sale of Debtor's Assets free and clear of liens, claims and encumbrances (with such liens, claims and encumbrances to attach to the proceeds of the sale of the Assets as provided in this Order) shall be self-executing, and neither the

Debtor, CCR nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order. Without in any way limiting the foregoing, CCR is empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

23. All entities who are presently, or on the Closing Date may be, in possession of some or all of Debtor's Assets are hereby directed to surrender possession of the Assets to CCR on the Closing Date.

**C. GOOD FAITH PURCHASE.**

24. The purchase of Debtor's Assets by CCR is a purchase in good faith for fair value within the meaning of section 363(m) of the Bankruptcy Code, and CCR is entitled to all of the protections afforded good faith purchasers by section 363(m) of the Bankruptcy Code.

25. The sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

26. Following the Closing Date, except for persons entitled to enforce assumed liabilities and permitted liens, all persons (including, but not limited to, the Debtor and/or their respective successors (including any trustee), creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding interests in the Debtor's Assets or against the Debtor in respect of Debtor's Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever against CCR or any affiliate of CCR or any of their respective property successors and assigns, or Debtor's Assets, as an alleged successor or on any other grounds, it being understood that nothing herein shall affect assets of the Debtor that are not Debtor's Assets.

28. No Person shall assert, and CCR and Debtor's Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of CCR or the Debtor, or any obligation of any other party, under or with respect to, Debtor's Assets, with respect to any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of Debtor that is not an expressly assumed liability.

29. Following the closing of the sale to CCR, no holder of any Interest shall interfere with CCR's title to, or use and enjoyment of, Debtor's Assets based on, or related to, any such interest, or based on any actions the Debtor may take in its Chapter 11 Case.

**D. ADDITIONAL DECREES.**

30. The recitals and findings of facts set forth above are hereby incorporated as a part of this Order.

31. As provided by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry. Notwithstanding Bankruptcy Rules 6004(h), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

32. The provisions of this Order are nonseverable and mutually dependent.

33. Nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the terms of this Order.

34. This Order shall be binding upon and inure to the benefit of the Debtor, CCR and each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members or agents, whether a signatory hereto or not, including, but not limited to, any subsequently appointed trustee (including without limitation a chapter 7 trustee).

35. This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Motion and to resolve any dispute concerning this Order, the Motion, or the rights and duties of

the parties hereunder or thereunder or any issues relating to the Motion and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Assets free and clear of all liens, encumbrances, security interests and claims of any kinds and nature whatsoever.

36. The division of this Order into sections or other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Order.

37. Entry of this Order is in the best interests of the Debtor, the Debtor's estate, its creditors, and other parties in interest.

38. In the event the sale is not consummated and is terminated for any reason, the Debtor shall have until September 18, 2015, to file a new motion to sell on any existing or new back-up offer or a plan of reorganization.

IT IS SO ORDERED.

SUBMITTED BY:

DARBY LAW PRACTICE, LTD.

*/s/ Kevin A. Darby, Esq.*
By:_____
   KEVIN A. DARBY, ESQ.
   Counsel for Debtor

# # #

In accordance with LR 9021, counsel submitting this document certifies as follows:

_____    The Court has waived the requirement of approval under LR 9021.

\_\_\_X\_\_\_    This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated on said order.

_____    I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

_____    No party appeared at the hearing or filed an objection to the motion.

                                           DARBY LAW PRACTICE, LTD.

                                           By: \_\_\_*/s/ Kevin A. Darby*_____
                                             KEVIN A. DARBY, ESQ.
                                             Attorney for Debtor and
                                             Debtor in Possession