1  Edmond "Buddy" Miller                                    E-Filed on: 08/20/2015
2  (Bar No. 3116)
   1610 Montclair Avenue, Suite C
3  Reno, NV 89509
   Telephone:  (775) 828-9898
4  Facsimile:   (775) 828-9893
   Email: bmiller@buddymillerlaw.com
5  *Counsel for Carson City*

6                    **UNITED STATES BANKRUPTCY COURT**

7                         **DISTRICT OF NEVADA**

8  In re:                                    Case No.:  BK-N-15-50211-GWZ
9
   EMPIRE RANCH GOLF COURSE, LLC,            Chapter:    11
10
11                    Debtor.                **CARSON CITY'S LIMITED OBJECTION
                                             REGARDING THE MOTION TO SELL
12                                           ASSETS FREE AND CLEAR OF LIENS
                                             PURSUANT TO 11 U.S.C. §363**
13
14                                           **Hearing Date:      August 25, 2015**
                                             **Hearing Time:      2:00 p.m.**
15                                           **Est. Time Req'd:**
                                             **Set by:             OST**
16

17        Carson City ("Carson City" or the "City"), a party in interest in the above-referenced

18  Chapter 11 case, by and through its undersigned counsel, Edmond Buddy Miller, Esq., hereby files

19  its limited objection (the "Objection") regarding the *Motion To Sell Assets Free And Clear Of*

20  *Liens Pursuant To 11 U.S.C. §363*, (the "Sale Motion"), filed August 5, 2015, Docket No. 57.

21  Carson City does **not** object to sale of the Debtor's Assets, as defined in the Sale Motion.  Rather,

22  Carson City only objects to the terms of the proposed *Order Granting Motion To Sell Assets Free*

23  *And Clear Of Liens Pursuant To 11 U.S.C. §363* ("Empire Ranch Proposed Sale Order"), a copy

24  of which is attached hereto as Exhibit A.[1] Because the Empire Ranch Proposed Order fails to

25  explicitly protect the City's continuing interest in the golf course, as authorized under the Effluent

26  Service Agreement and Addendums, the Empire Ranch Proposed Sale Order should be modified.

27

28

_____

[1] This copy of the Empire Ranch Proposed Order is the same version that is attached to the Sale Motion as Exhibit 1.

This Objection is based upon the points and authorities below, the supporting Declaration of David Bruketta (the "Bruketta Declaration") filed contemporaneously herewith, the exhibits attached thereto, and all the pleadings and papers on file in this case, judicial notice of which is requested pursuant to Fed.R.Evid. 201.

## I.    BACKGROUND

### A.    <u>The Effluent Service Agreement.</u>

1.    The City is a party to the 1983 Effluent Service Agreement and six Addendums (collectively, the "Effluent Service Agreement and Addendums.")  See Bruketta Declaration, ¶¶ 4, 7-9, **Exhibits 1-7**. The Effluent Service Agreement and Addendums authorize the City to dispose of effluent or reclaimed water at the Empire Ranch Golf Course (the "golf course"), located at 1875 Fair Way Drive, Carson City, Nevada, APN 010-581-15.  The City has similar agreements with other real property users of reclaimed water. A more detailed history of Carson City's reclaimed water system and the City's continuing relationship with the golf course is set forth in the Bruketta Declaration, which is incorporated herein by this reference.

2.    The 1983 Effluent Service Agreement, by it express terms, is a covenant that runs with the land, together with easements for access for the City, and it was binding on the property owner and his successors, assigns and all subsequent owners of all or part of the real property. Declaration, **Exhibit 1**, Section 15, page 4, bates page Marano 193. The Addendums continued the covenants, and indicated easements, right of ways and other servitudes were to be dedicated. See **Exhibit 3,** Section 7, page 6, bates page Marano 211.

3.    The 1995 Addendum to the Effluent Service Agreement provided that Stanton Park Development, Inc., ("Stanton"), the affiliate and predecessor to Empire Ranch Golf Course, LLC, was obligated, at its sole expense, to do the design, construction and maintenance of any facilities, structures or systems necessary for the use of the reclaimed water at the golf course.  See **Exhibit 3,** Section 5, page 5.  In addition, the 1995 Addendum to the Effluent Service Agreement required Stanton to dedicate to the City, at no cost to the City, any (1) easements or rights of way over or upon the golf course that Stanton owned and were necessary to provide services to the golf course, and (2) the structures or improvements constructed by Stanton and located in the City-owned

Edmond "Buddy" Miller
1610 Montclair Avenue
Suite c
Reno, NV 89509

-2-

1  right-of-way or easement.  Stanton made the dedications, and those items remain property of the

2  City.

3      4.      Clearly, the City is a party with a substantial interest in the proceedings of this

4  bankruptcy case because of the Effluent Service Agreement and Addendums and their close

5  connection to the operation of the golf course.

6      **B.      <u>The Proposed Sale Of The Golf  Course.</u>**

7      5.      On August 5, 2015, the Debtor filed the Sale Motion with the attached Empire Ranch

8  Proposed Sale Order, and the supporting Declaration of Mr. Dwight Millard, with the attached fully

9  executed Purchase Agreement dated July 30, 2015.

10     6.      The Debtor now seeks an order allowing the Debtor to sell "the Debtor's Assets" to

11 Carson Creek Resort, Inc. ("CCR") for $3,500,000.00, or to any higher bidder at the hearing on the

12 Sale Motion.  The "Debtor's Assets" consist of the golf course, approximately 221-acres of real

13 property located at 1875 Fair Way Drive, Carson City, Nevada, the contractual rights to receive

14 1385 acre feet of effluent water from Carson City per year, personal property consisting of 110 golf

15 carts, inventory for the golf course and restaurant, and miscellaneous equipment and tools to operate

16 the restaurant and to maintain the golf course.  Sale Motion, page 2.

17     7.      The Sale Motion seeks to sell Debtor's Assets free and clear of liens, claims, and

18 encumbrances, and specifically identifies six real property lienholders and their liens.  See Sale

19 Motion, page 3.

20     8.      As far as the City can determine, the Sale Motion does not purport to sell the golf

21 course and the Debtor's Assets free and clear of the City's interest in the Effluent Service

22 Agreement and Addendums.  To that end, the Debtor specifies that it is selling "the contractual

23 rights to receive 1385 acre feet of effluent water from Carson City per year."  On the other hand,

24 the City's interest in the golf course as a reclaimed water usage site is not identified in the Sale

25 Motion or the Purchase Agreement as "assumed liabilities and permitted liens," or an "expressly

26 assumed liability" of the buyer.

27 / / /

28 / / /

**C.**      **The Empire Ranch Proposed Sale Order.**

9.      As noted, the Debtor attached to the Sale Motion the Empire Ranch Proposed Sale Order.

10.      The Empire Ranch Proposed Sale Order approves the sale and overrules any objections. See Exhibit A hereto, Part A at page 3. The Empire Ranch Proposed Sale Order also authorizes the sale free and clear of liens, requires turnover of Debtor's assets, vests legal title in CCR, authorizes payment of a reserve to the IOLTA account of Debtor's counsel for payment of closing costs, fees and other administrative claims, and disburses the sale proceeds to the lienholders. See Exhibit A hereto, Part B at page 4. Finally, the Empire Ranch Proposed Sale Order finds that the purchase was in good faith. But, problematically, Section 26 on page 5 and Sections 28 and 29 on page 6 (there is no Section 27) make overbroad prohibitions. See Exhibit A hereto, Part C at page 5. This will be discussed in more detail below.[2]

11.      The undersigned sent an email to counsel for the Debtor on August 19, 2015 asking to discuss the Empire Ranch Proposed Sale Order and Sections 26-29, but counsel were not able to convene a meeting before the deadline to file the Objection.

**D.**      **The NDEP Discharge Permit.**

12.      As noted in the Bruketta Declaration, it is necessary for the owner of the golf course to hold the NDEP Discharge Permit from the Nevada Division of Environmental Protection ("NDEP") in order for the owner to irrigate the golf course with reclaimed water under the Effluent Water Service Agreement and Addendums. See Bruketta Declaration, ¶¶ 13-20, and **Exhibits 9-11**.

13.      The Sale Motion indicates that Empire Ranch Golf Course, LLC will make available its Nevada Division of Environmental Protection's Authorization to Discharge for Empire Ranch Golf Course, Permit NEV92015, effective August 19, 2011 and expiring August 18, 2016 ("NDEP Discharge Permit").

---

[2] There is a final Part D, entitled "Additional Decrees," that contains mostly boilerplate, and also provides that if the sale is not consummated and is terminated for any reason, the Debtor shall have until September 18, 2015 to file a new motion to sell on any existing or new back-up offer or a plan of reorganization.

14.    A transfer of a permit ordinarily takes 60-90 days, but here the sale is scheduled to close August 31, 2015.  Absent expedited approval and other interim relief, the new owner would not be able to discharge the reclaimed water without the NDEP Discharge Permit.

## II.    DISCUSSION

Carson City does not object to the sale of the golf course.  Carson City does object to the Empire Ranch Proposed Sale Order.  Sections 26-29 of the Empire Ranch Proposed Sale Order appear overbroad and may impair the City's ability to perform and enforce the Effluent Service Agreement and Addendums post-sale and storm water drainage access agreements.  Carson City requests that the Court find that the Debtor's sale of the golf course is not free and clear of any covenants, easements and other equitable servitudes related to the Effluent Service Agreement and Addendums.  The City also requests that the winning bidder be required immediately to apply for the transfer of the NDEP Discharge Permit.

### A.    <u>Sections 26-29 Of The Empire Ranch Proposed Sale Order Should Be Stricken, Or Carson City Should Be Designated A Person Entitled To Enforce Assumed Liabilities So Carson City Does Not Violate The Empire Ranch Proposed Sale Order.</u>

1.    Carson City will continue to supply the reclaimed water to and have an ongoing relationship with the new owner.  Carson City requests that Sections 26-29 of the Empire Ranch Proposed Sale Order should be stricken, or Carson City should be designated "A Person Entitled To Enforce Assumed Liabilities And Permitted Liens," that is, the existing covenants, easements and other servitudes.  The Empire Ranch Proposed Sale Order should be clear so that a new owner or its successor will not have a legal basis to challenge the City's authority to enforce the Effluent Service Agreement and Addendums or to comply with an order from NDEP to stop supplying reclaimed water if the new owner is in violation of its NDEP Discharge Permit.

2.    Section 26 of the Empire Ranch Proposed Sale Order provides as follows:

26.    Following the Closing Date, except for persons entitled to enforce assumed liabilities and permitted liens, all persons (including, but not limited to, the Debtor and/or their respective successors (including any trustee), creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the

foregoing) holding interests in the Debtor's Assets or against the Debtor in respect of Debtor's Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever against CCR or any affiliate of CCR or any of their respective property successors and assigns, or Debtor's Assets, as an alleged successor or on any other grounds, it being understood that nothing herein shall affect assets of the Debtor that are not Debtor's Assets.

3.      Section 26 makes draconian prohibitions and a permanent injunction against "all persons" from asserting, prosecuting, or otherwise pursuing "any Interests" of any kind or nature whatsoever against CCR or any affiliate of CCR or any of their respective property successors and assigns, or Debtor's Assets.  "All persons" includes "governmental units" and "local officials," including those maintaining "any authority relating to any environmental, health and safety laws."

4.      There is a Footnote 1 in the Empire Ranch Proposed Sale Order that provides "Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion."  The term "Interests" is capitalized in Section 26, but the term is never a defined term in the Sale Motion or the Purchase Agreement, leaving an ambiguity in its meaning.

5.      Section 26 has an exception to its prohibitions, and it is for "persons entitled to enforce assumed liabilities and permitted liens."  It is the City's contention that the Effluent Service Agreement and Addendums and the storm water agreements for runoff are "assumed liabilities."  This is true even though, both the Sale Motion and the Millard Declaration specifically identify the Effluent Service Agreement and Addendums only as "certain contractual rights to receive 1385 acre feet of effluent water from Carson City per year," and do not identify the liability and obligation to maintain the reclaimed water system.  But clearly those obligations and liabilities are ongoing, especially since Empire Ranch Golf Course, LLC is liable for at least one full year even if it gives notice of termination of the agreement.  See **Exhibit 3**, Section 1, page 2.

6.      The City requests that the Court find that the new owner expressly assumes liability for the Effluent Service Agreement and Addendums and that the City may enforce same as provided in Section 26.

7.      Section 28 of the Empire Ranch Proposed Sale Order provides as follows:

28. No Person shall assert, and CCR and Debtor's Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of CCR or the Debtor, or any obligation of any other party, under or with respect to, Debtor's Assets, with respect to any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of Debtor that is not an expressly assumed liability.

8. Under Section 28 "No Person" can assert defaults breaches, etc., whether contractual or other form of relief, for any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of Debtor.

9. The City requests that the Court find that the new owner expressly assumes liability for the Effluent Service Agreement and Addendums and that the City may enforce same as provided in Section 28.

10. Section 29 of the Empire Ranch Proposed Sale Order provides as follows:

29. Following the closing of the sale to CCR, no holder of any Interest shall interfere with CCR's title to, or use and enjoyment of, Debtor's Assets based on, or related to, any such interest, or based on any actions the Debtor may take in its Chapter 11 Case any obligation of Debtor that is not an expressly assumed liability.

11. Under Section 29 "no holder of any Interest" may interfere with the new owner's "use and enjoyment of, Debtor's Assets" based on, or related to, any such interest, or based on any actions the Debtor may take in its Chapter 11 Case.

12. Again, the term "Interest" is capitalized in Section 29, but the term is never a defined term in the Sale Motion, creating an ambiguity.

13. Nevertheless, the City should be permitted to take action regarding the new owner related to the Effluent Service Agreement and Addendums because they should be deemed an "expressly assumed liability."

14. With respect to Sections 26-29, if NDEP instructs Carson City not to supply effluent water because the new owner is in violation of its NDEP Discharge Permit, then the City will be interfering with the new owner's use and enjoyment of the golf course, and liable under the Empire Ranch Proposed Sale Order. That would plainly be an absurd result. Accordingly, the Empire Ranch Proposed Sale Order should expressly provide that the Sections 26-29 do not apply

to the City because the new owner, vis-à-vis the City, would be deemed to have expressly assumed the liability related to the Effluent Service Agreement and Addendums.

**B. The Court Should Expressly Find That The Debtor Does Not Sell The Golf Course Free And Clear Of Covenants, Easements And Other Equitable Servitudes Related To The Effluent Service Agreement And Addendums.**

15.    The Debtor did not indicate in the Sale Motion that it wanted to sell the golf course free and clear of any of the covenants, easements and other equitable servitudes related to the Effluent Service Agreement and Addendums.  See LR 6004(b)(2) requiring a list of all lien holders with interest in the property to be sold under the Sale Motion.  However, the breadth of Sections 26-29 raise the question, is the Debtor selling free and clear of the covenants, easements, and other equitable servitudes?

16.    Accordingly, the Court should modify the Empire Ranch Proposed Sale Order to add an express finding and conclusion that the Debtor does not sell the golf course free and clear of covenants, easements and other equitable servitudes related to the Effluent Service Agreement and Addendums or storm water agreements.  In this way the City may avoid a dispute over this issue in the future.

**C. Immediately After The Determination Of The Successful Bidder, The Bankruptcy Court Should Order The Buyer To Contact NDEP To Arrange For An Expedited NDEP Discharge Permit Transfer.**

17.    As indicated in the Bruketta Declaration, NDEP is willing to work with the new owner of the golf course in order to expedite the transfer of the NDEP Discharge Permit.

18.    Because this sale will close on an expedited basis, the new owner needs the assistance of NDEP in promptly transferring the NDEP Discharge Permit and obtaining authorization to discharge effluent on an interim basis, given that watering may still be necessary in the remaining warms months of late summer and autumn.

19.    Accordingly, the Court should modify the Empire Ranch Proposed Sale Order to add a decree that, within one business day after approval and acceptance of the winning bid, the successful bidder shall send a letter on its letterhead via email and U.S. Mail to Mr. Cliff Lawson of NDEP, with a copy via email and U.S. Mail to Mr. David Bruketta of Carson City, requesting

the transfer of the NDEP Permit to the buyer and stating that the buyer will comply with all the terms of the NDEP Permit.  The contact information is below.

| Cliff Lawson, P.E.<br>Branch Supervisor<br>Nevada Division Of Environmental Protection<br>Bureau Of Water Pollution Control<br>901 Stewart Street, Suite 4001<br>Carson City NV 89701<br>phone: (775) 687-9414<br>email: clawson@ndep.nv.gov | David Bruketta<br>Utility Manager<br>Carson City Public Works<br>3505 Butti Way<br>Carson City, NV 89701<br>phone: (775) 283-7357<br>email: dbruketta@carson.org |

**III.    CONCLUSION**

Carson City objects to the Empire Ranch Proposed Sale Order, Sections 26-29, and asks the Court to strike these Sections or find that the new buyer assumes the liabilities related to the Effluent Service Agreement and Addendums, and storm water agreements, and the City is excepted from the restrictions of Sections 26-29.  In addition, Carson City requests that the Court find that the Debtor does not sell free and clear of any covenants, easements and other equitable servitudes related to the Effluent Service Agreement and Addendums.  Finally, the City requests that the winning bidder be required immediately to apply for the transfer of the NDEP Discharge Permit.

DATED this 20th day of August, 2015.

/s/ Edmond Buddy Miller
Edmond Buddy Miller, Esq.
*Counsel for Carson City*

# **<u>EXHIBIT A</u>**

# **<u>EXHIBIT A</u>**

KEVIN A. DARBY, NVSB# 7670
TRICIA M. DARBY, NVSB# 7956
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada 89519
Telephone: 775.322.1237
Facsimile: 775.996.7290
kevin@darbylawpractice.com

Counsel for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

EMPIRE RANCH GOLF COURSE, LLC,

                Debtor.

CASE NO.:  BK-N-15-50211-gwz
Chapter 11

**ORDER GRANTING MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363**

Hearing Date:  TBD
Hearing Time:  OST Requested

Upon the *Motion To Sell Assets Free and Clear of Liens Pursuant To 11 U.S.C. §363*, filed July 31, 2015 (the "Motion") by Debtor EMPIRE RANCH GOLF COURSE, LLC, a (the "Debtor"), in which Debtor seeks an order under 11 U.S.C. §363 and Fed. R. Bankr. P. 2002, 6004 and 9014 approving the sale of all of Debtor's assets free and clear of liens, claims, and encumbrances to CARSON CREEK RESORT, INC. ("CCR"); and the Motion having come before this Court on a duly noticed hearing, and having considered all objections and arguments

for and against the Motion, and good cause appearing; and finding:[1]

1. Debtor's Motion seeks an order approving the sale of certain assets owned by the Debtor to CCR, pursuant to the terms of the Purchase Agreement attached to the Declaration of Dwight Millard as Exhibit 1,   free and clear of all liens, claims and encumbrances, for cash in the amount of **$3,500,000.00,** to be paid at close of escrow on or before August 30, 2015   The assets being sold to CCR are identified in detail in the Purchase Agreement and include, but are not limited to, the following (the "Debtor's Assets"):

> a. <u>Debtor's Real Property:</u> 1875 Fair Way Drive, Carson City, Nevada.  Debtor's real property consists of approximately 221-acres of real property, plus certain contractual rights to receive 1385 acre feet of effluent water from Carson City per year.

> b. <u>Debtor's Personal Property:</u> Debtor's personal property consists of: 110 golf carts; inventory for golf course and restaurant; miscellaneous equipment and tools to operate restaurant and to maintain golf course.

2. CCR is not an insider of the Debtor or otherwise related or affiliated with the Debtor in any way.

3. CCR is acquiring the Debtor's Assets "as is", without warranties or representations, except as provided in the Purchase Agreement.

4. The sale of Debtor's Assets to CCR  is free and clear of any lien, claim or encumbrance pursuant to 11 U.S.C. §363(f).

5. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

6. The Debtor is the sole and lawful owner of Debtor's Assets to be sold to CCR.

7. No qualifying or competing bids were submitted.

8. The offer of CCR to purchase the Debtor's Assets is the highest and best offer received by the Debtor.  The purchase price to be paid by CCR is fair and reasonable market value for the Debtor's Assets.

9. CCR is a good faith purchaser with respect to Debtor's Assets, within the meaning of section 363(m) of the Bankruptcy Code. The sale to CCR was negotiated, proposed and entered

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

into by the parties in good faith, from arm's length bargaining positions and without collusion, and CCR therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the assets. Neither the Debtor nor CCR have engaged in any conduct that would cause or permit the sale to be voided under Section 363(n) of the Bankruptcy Code.

10.   CCR shall not assume or become liable for any pre-petition liens, claims, interests and/or encumbrances relating to Debtor's Assets by the Debtor.  Any valid and enforceable liens, claims, interests and/or encumbrances shall attach to the proceeds of the sale with the same priority, validity, and enforceability as they had immediately before the closing of the sale.

11.   The Debtor has articulated sound business reasons for selling the Assets as set forth in the Motion outside of a chapter 11 plan, and it is a reasonable exercise of the Debtor's business judgment to execute, deliver and consummate the sale with CCR and consummate the transactions contemplated by the Motion and as set forth in this Order.

12.   The terms and conditions of the sale, including the total consideration to be realized by the Debtor, are fair and reasonable, and the transactions contemplated by the Motion, as approved by this Order, are in the best interests of the Debtor, its creditors and the estate.

13.   A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code. The Debtor may sell, transfer and assign Debtor's Assets free and clear of all liens, claims, interests and/or encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code.

14.   The transfer of Debtor's Assets to CCR is or will be a legal, valid and effective transfer of Debtor's Assets, and will vest CCR with all right, title and interest in and to Debtor's Assets, free and clear of all liens, claims, interests and/or encumbrances.

15.   The requirements of sections 363(b) and 363(f) of the Bankruptcy Code and any other applicable law relating to the sale of Debtor's Assets have been satisfied.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**A. SALE OF ASSETS APPROVED; TRANSACTIONS AUTHORIZED.**

16.   The Motion is GRANTED.

17.   All objections to the Motion or the relief requested therein that have not been

withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits and denied.

18.  The Motion, the Purchase Agreement and the transactions contemplated thereby are approved pursuant to Section 363(b) and (f) as modified by this Order, and the Debtor is hereby authorized and empowered to perform their obligations under the Purchase Agreement and to act as necessary to effectuate the sale without further corporate authorization or Order of this Court.

**B. TRANSFER OF THE ASSETS TO CCR.**

19.  The transfer of Debtor's Assets to CCR constitutes a legal, valid and effective transfer and shall vest CCR with all right, title and interest of the Debtor in and to Debtor's Assets free and clear of all claims, liens and encumbrances.

20.  After paying all of seller's costs of sale, including title/escrow fees and transfer tax, the net proceeds from the sale shall $3,480,000, which shall be disbursed directly from escrow as follows:

1) **$50,000** – Paid to Darby Law Practice, LTD IOLTA Trust Account to be used to pay administrative expenses in this case, including Legal Fees, US Trustee's Fees and Accounting Fees.

2) **$1,180,000** – Paid to GSR Investments, LLC on account of its first priority lien;

3) **$2,026,804** – Paid to Patricia Thompson ($594,220) and Stanton Park Development, Inc ($1,432,589) on account of their second priority lien;

4) **$207,625** – Paid to Nila Loucks on account of her third priority lien;

5) **All remaining net sale proceeds** (approximately $18,571) – Paid to Christine Millard, Trustee of the Barger Family Trust, on account of its fourth priority lien.

21.  This Order shall be binding upon, and shall inure to the benefit of, the Debtor and CCR and their respective successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor or any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 11.

22.  The provisions of this Order authorizing the sale of Debtor's Assets free and clear of liens, claims and encumbrances (with such liens, claims and encumbrances to attach to the proceeds of the sale of the Assets as provided in this Order) shall be self-executing, and neither the

Debtor, CCR nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order. Without in any way limiting the foregoing, CCR is empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

23.  All entities who are presently, or on the Closing Date may be, in possession of some or all of Debtor's Assets are hereby directed to surrender possession of the Assets to CCR on the Closing Date.

**C. GOOD FAITH PURCHASE.**

24.  The purchase of Debtor's Assets by CCR is a purchase in good faith for fair value within the meaning of section 363(m) of the Bankruptcy Code, and CCR is entitled to all of the protections afforded good faith purchasers by section 363(m) of the Bankruptcy Code.

25.  The sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

26.  Following the Closing Date, except for persons entitled to enforce assumed liabilities and permitted liens, all persons (including, but not limited to, the Debtor and/or their respective successors (including any trustee), creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding interests in the Debtor's Assets or against the Debtor in respect of Debtor's Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever against CCR or any affiliate of CCR or any of their respective property successors and assigns, or Debtor's Assets, as an alleged successor or on any other grounds, it being understood that nothing herein shall affect assets of the Debtor that are not Debtor's Assets.

28.   No Person shall assert, and CCR and Debtor's Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of CCR or the Debtor, or any obligation of any other party, under or with respect to, Debtor's Assets, with respect to any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of Debtor that is not an expressly assumed liability.

29.   Following the closing of the sale to CCR, no holder of any Interest shall interfere with CCR's title to, or use and enjoyment of, Debtor's Assets based on, or related to, any such interest, or based on any actions the Debtor may take in its Chapter 11 Case.

**D.  ADDITIONAL DECREES.**

30.   The recitals and findings of facts set forth above are hereby incorporated as a part of this Order.

31.   As provided by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry. Notwithstanding Bankruptcy Rules 6004(h), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

32.   The provisions of this Order are nonseverable and mutually dependent.

33.  Nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the terms of this Order.

34.  This Order shall be binding upon and inure to the benefit of the Debtor, CCR and each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members or agents, whether a signatory hereto or not, including, but not limited to, any subsequently appointed trustee (including without limitation a chapter 7 trustee).

35.  This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Motion and to resolve any dispute concerning this Order, the Motion, or the rights and duties of

the parties hereunder or thereunder or any issues relating to the Motion and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Assets free and clear of all liens, encumbrances, security interests and claims of any kinds and nature whatsoever.

36. The division of this Order into sections or other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Order.

37. Entry of this Order is in the best interests of the Debtor, the Debtor's estate, its creditors, and other parties in interest.

38. In the event the sale is not consummated and is terminated for any reason, the Debtor shall have until September 18, 2015, to file a new motion to sell on any existing or new back-up offer or a plan of reorganization.

IT IS SO ORDERED.

SUBMITTED BY:

DARBY LAW PRACTICE, LTD.

*/s/ Kevin A. Darby, Esq.*
By:_____
   KEVIN A. DARBY, ESQ.
   Counsel for Debtor


# # #