_____
Honorable Gregg W. Zive
United States Bankruptcy Judge

Entered on Docket
September 02, 2015

KEVIN A. DARBY, NVSB# 7670
TRICIA M. DARBY, NVSB# 7956
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada  89519
Telephone: 775.322.1237
Facsimile:  775.996.7290
kevin@darbylawpractice.com

Counsel for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | CASE NO.:   BK-N-15-50211-gwz<br>Chapter 11 |
| EMPIRE RANCH GOLF COURSE, LLC, | |
| Debtor. | **ORDER GRANTING MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363** |
| | Hearing Date:  August 25, 2015<br>Hearing Time:  2:00 p.m. |

Upon the *Motion To Sell Assets Free and Clear of Liens Pursuant To 11 U.S.C. §363*, filed July 31, 2015 (the "Motion") by Debtor EMPIRE RANCH GOLF COURSE, LLC, a (the "Debtor"), in which Debtor seeks an order under 11 U.S.C. §363 and Fed. R. Bankr. P. 2002, 6004 and 9014 approving the sale of all of Debtor's assets free and clear of certain liens, claims, and encumbrances to CARSON CREEK RESORT, INC. ("CCR"); and the Motion having come before this Court on a duly noticed hearing, and having considered all objections and arguments for and against the Motion, and good cause appearing; and finding:

1. Debtor's Motion seeks an order approving the sale of certain assets owned by the Debtor to CCR, pursuant to the terms of the Purchase Agreement attached to the Declaration of Dwight Millard as Exhibit 1, free and clear of certain liens, claims and encumbrances, for cash in the amount of **$3,500,000.00,** to be paid at close of escrow on or before September 4, 2015. The assets being sold to CCR are identified in detail in the Purchase Agreement and include, but are not limited to, the following (the "Debtor's Assets"):

> a. <u>Debtor's Real Property:</u> 1875 Fair Way Drive, Carson City, Nevada. Debtor's real property consists of approximately 221-acres of real property, also known as Carson City Assessor's Parcel Number 010-581-15 ("Debtor's Real Property").
>
> b. <u>Effluent Service Agreement and Addenda</u>: Debtor's Real Property is subject to certain covenants that run with the land, and easements and right of ways in favor of Carson City, which allow Carson City to supply and the Debtor to accept and apply effluent (reclaimed waste water) to Debtor's Real Property. In this regard the rights and obligations of the Debtor and Carson City are addressed in the following:
>
>> i. Agreement dated March 17, 1983 and recorded on March 17, 1983, in Book 337, page 111, as Document No. 17118, Official Records of Carson City, Nevada; and
>>
>> ii. Addendum dated April 28, 1988 and recorded April 29, 1988, as Document No. 69901, Official Records of Carson City, Nevada; and
>>
>> iii. Addendum dated September 20, 1995 and recorded June 22, 2004, as Document No. 320670, Official Records of Carson City, Nevada; and
>>
>> iv. Addendum dated August 16, 1996 and recorded August 16, 1996, as Document No. 192825, Official Records of Carson City, Nevada; and
>>
>> v. Addendum dated September 22, 1997 and recorded June 22, 2004, as Document No. 320670, Official Records of Carson City, Nevada; and
>>
>> vi. Addendum dated June 4, 2004 (the "2004 Addendum") and recorded June 22, 2004, as Document No. 320670, Official Records of Carson City, Nevada; and
>>
>> vii. Addendum dated May 18, 2006 and recorded on May 19, 2006, as Document No. 353941, Official Records of Carson City, Nevada.
>
> The Agreement and Addenda identified above shall collectively be referred to as the "Effluent Service Agreement". Pursuant to the Effluent Service Agreement, Carson City agrees to supply and the owner of Debtor's Real Property agrees to accept not less than 790 acre-feet of reclaimed waste water per year, subject to the limitations set forth in the Effluent Service Agreement, the 2004 Addendum, and Paragraph A.2. therein. At the request of said owner, Carson City agrees to supply additional

reclaimed waste water in an amount up to 1,385 acre-feet per year subject to the availability of such reclaimed waste water and Carson City's contractual obligations, which are of a higher priority, as more fully set forth in the Effluent Service Agreement and the 2004 Addendum.

c. <u>NDEP Discharge Permit:</u>  In connection with the Effluent Service Agreement, Debtor holds a Discharge Permit from the Nevada Division of Environmental Protection ("NDEP"), which is permit number NEV92015, effective August 19, 2011, and expiring August 18, 2016 (the "NDEP Discharge Permit").

d. <u>Debtor's Personal Property:</u> Debtor's personal property consists of: 108 golf carts; inventory for golf course and restaurant; miscellaneous equipment and tools to operate restaurant and to maintain golf course ("Debtor's Personal Property").

2. CCR is not an insider of the Debtor or otherwise related or affiliated with the Debtor in any way.

3.  CCR is acquiring the Debtor's Assets "as is", without warranties or representations, except as provided in the Purchase Agreement.

4.  Pursuant to 11 U.S.C. §363(f), the sale of Debtor's Assets to CCR is free and clear of any lien, claim or encumbrance, with the exception of the Effluent Service Agreement and all other recorded easements, rights of way and covenants that run with Debtor's Real Property (hereinafter "Lien, Claim Or Encumbrance").

5.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

6.  The Debtor is the sole and lawful owner of Debtor's Assets to be sold to CCR.

7.  No qualifying or competing bids were submitted.

8. The offer of CCR to purchase the Debtor's Assets is the highest and best offer received by the Debtor.  The purchase price to be paid by CCR is fair and reasonable market value for the Debtor's Assets.

9. CCR is a good faith purchaser with respect to Debtor's Assets, within the meaning of section 363(m) of the Bankruptcy Code. The sale to CCR was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion, and CCR therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Debtor's Assets.  Neither the Debtor nor CCR have engaged in any conduct that would

cause or permit the sale to be voided under Section 363(n) of the Bankruptcy Code.

10. The Debtor has articulated sound business reasons for selling the Debtor's Assets as set forth in the Motion outside of a chapter 11 plan, and it is a reasonable exercise of the Debtor's business judgment to execute, deliver and consummate the sale with CCR and consummate the transactions contemplated by the Motion and as set forth in this Order.

11. The terms and conditions of the sale, including the total consideration to be realized by the Debtor, are fair and reasonable, and the transactions contemplated by the Motion, as approved by this Order, are in the best interests of the Debtor, its creditors and the estate.

12. A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code. The Debtor may sell, transfer and assign Debtor's Assets free and clear of all Liens, Claims Or Encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code.

13. The transfer of Debtor's Assets to CCR is or will be a legal, valid and effective transfer of Debtor's Assets, and will vest CCR with all right, title and interest in and to Debtor's Assets, free and clear of all Liens, Claims Or Encumbrances.

14. The requirements of sections 363(b) and 363(f) of the Bankruptcy Code and any other applicable law relating to the sale of Debtor's Assets have been satisfied.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**A. SALE OF DEBTOR'S ASSETS APPROVED; TRANSACTIONS AUTHORIZED.**

15. The Motion is GRANTED.

16. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits and denied.

17. The Motion, the Purchase Agreement and the transactions contemplated thereby are approved pursuant to Section 363(b) and (f) as modified by this Order, and the Debtor is hereby authorized and empowered to perform their obligations under the Purchase Agreement and to act as necessary to effectuate the sale without further corporate authorization or Order of this Court.

///

**B. TRANSFER OF DEBTOR'S ASSETS TO CCR.**

18. The transfer of Debtor's Assets to CCR constitutes a legal, valid and effective transfer and shall vest CCR with all right, title and interest of the Debtor in and to Debtor's Assets free and clear of all Liens, Claims Or Encumbrances.

19. After paying all of seller's costs of sale, including title/escrow fees and transfer tax, the net proceeds from the sale shall be approximately $3,485,000, which shall be disbursed directly from escrow as follows:

   a) **$5,250.00** – Paid to Carson City Utilities on account of utilities liens.

   b) **$50,000.00** – Paid to Darby Law Practice, LTD IOLTA Trust Account to be used to pay administrative expenses in this case, including Legal Fees, US Trustee's Fees and Accounting Fees.

   c) **$1,210,561.44** (plus a per diem of $152.79 per day for each day after September 4, 2015, though the date of closing) – Paid to GSR Investments, LLC on account of its first priority lien (the "GSR Deed of Trust");

   d) **$2,026,804.00** – Paid to Patricia Thompson ($594,220) and Stanton Park Development, Inc. ($1,432,589) on account of their second priority deed of trust recorded June 30, 1998, as Document No. 219914, Official Records, Carson City, Nevada (the "Thompson/SPD Deed of Trust");

   e) **$112,500.00** – Paid to Nila Loucks, Trustee of the Loucks Family Decedents Trust, dated July 13, 1988, on account of her third and fourth priority deeds of trust recorded May 9, 2005, as Document No. 336688, and April 12, 2006, as Document No. 352269, Official Records, Carson City, Nevada (together the "{Loucks Deeds of Trust"); and

   f) **All remaining net sale proceeds** (approximately $79,884.56) – Paid to Christine Millard, Trustee of the George W. Barger Family Trust, dated June 25, 1981, on account of its fifth priority deed of trust recorded December 20, 2006, as Document No. 362358, Official Records, Carson City, Nevada (the "Barger Deed of Trust").

20. As long as escrow closes and payments are made in accordance with Paragraph 20, above, the sale of Debtor's Assets to CCR shall be free and clear of the GSR Deed of Trust, the Thompson/SPD Deed of Trust, the Loucks Deeds of Trust, the Barger Deed of Trust, as well as all subordinate liens, including, but not limited to the following:

   a) The deed of trust recorded March 18, 2010, as Document No. 398907, Official Records Carson City, Nevada, securing debt in the original principal amount of $160,000 owed

to Ruth Hughes, as to an undivided 30.12% interest and Leona E. White, Trustee of The Leona E White Family Trust, dated July 26, 1993, as to an undivided 69.88% interest (the "White/Hughes Deed of Trust"); and

b) The Federal Tax Lien in favor of the United States of America, District Director of Internal Revenue for $42,146.98, plus interest, recorded January 18, 2001, as Document No. 408361, Official Records Carson City, Nevada (the "Federal Tax Lien").

21. Subject to escrow closing and lienholders being paid as provided in Paragraph 20, above, this Order shall constitute a release of liens, and specifically releases: (1) the GSR Deed of Trust; (2) the Thompson/SPD Deed of Trust; (3) the Loucks Deeds of Trust; (4) the Barger Deed of Trust; (5) the White/Hughes Deed of Trust; and (6) the Federal Tax Lien. The release provided by this Order is effective and binding on each of the foregoing lien holders and this Order can be recorded as a lien release, without further action or demand from any such lien holder.

22. This Order shall be binding upon, and shall inure to the benefit of, the Debtor and CCR and their respective successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor or any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 11.

23. CCR shall expressly assume all obligations of the real property owner under the Effluent Service Agreement and all other recorded easements, rights of way and covenants that run with Debtor's Real Property. With the exception of the obligations of the real property owner under the Effluent Service Agreement and all other recorded easements, rights of way and covenants that run with Debtor's Real Property, CCR shall not assume or become liable for any pre-petition Liens, Claims Or Encumbrances relating to Debtor's Assets by the Debtor. Any valid and enforceable Lien, Claim Or Encumbrance shall attach to the proceeds of the sale with the same priority, validity, and enforceability as they had immediately before the closing of the sale.

24. The provisions of this Order shall be self-executing, and neither the Debtor, CCR nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order. Without

in any way limiting the foregoing, Debtor, CCR and First Centennial Title Company are empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

25. CCR shall immediately contact NDEP to arrange for the transfer of the NDEP Discharge Permit, shall work with NDEP and Carson City to expedite the transfer of the NDEP Discharge Permit, and shall work with NDEP and Carson City after close of escrow to continue irrigating the golf course pending the transfer of the NDEP Discharge permit.

26. All entities who are presently, or on the Closing Date may be, in possession of some or all of Debtor's Assets are hereby directed to surrender possession of the Debtor's Assets to CCR on the Closing Date.

**C. GOOD FAITH PURCHASE.**

27. The purchase of Debtor's Assets by CCR is a purchase in good faith for fair value within the meaning of section 363(m) of the Bankruptcy Code, and CCR is entitled to all of the protections afforded good faith purchasers by section 363(m) of the Bankruptcy Code.

28. The sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

29. With the exception of the obligations of the real property owner, and the rights of Carson City, under the Effluent Service Agreement and all other recorded easements, rights of way and covenants that run with Debtor's Real Property, and also with the exception of the obligations of the holder of, and the rights of the State of Nevada under, the NDEP Discharge Permit, following the Closing Date, all persons (including, but not limited to, the Debtor and/or their respective successors (including any trustee), creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding interests in the Debtor's Assets or against the Debtor in respect of Debtor's Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from

asserting, prosecuting, or otherwise pursuing any interests of any kind or nature whatsoever against CCR or any affiliate of CCR or any of their respective property successors and assigns, or Debtor's Assets, as an alleged successor or on any other grounds, it being understood that nothing herein shall affect assets of the Debtor that are not Debtor's Assets.

30.  With the exception of the rights of Carson City, under the Effluent Service Agreement and all other recorded easements, rights of way and covenants that run with Debtor's Real Property, and also with the exception of the rights of the State of Nevada under the NDEP Discharge Permit, no person shall assert, and CCR and Debtor's Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of CCR or the Debtor, or any obligation of any other party, under or with respect to, Debtor's Assets, with respect to any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of Debtor that is not an expressly assumed liability.

31.  With the exception of the rights of Carson City, under the Effluent Service Agreement and all other recorded easements, rights of way and covenants that run with Debtor's Real Property, and also with the exception of the rights of the State of Nevada under the NDEP Discharge Permit, following the closing of the sale to CCR, no holder of any interest in the Debtor or the Debtor's Assets shall interfere with CCR's title to, or use and enjoyment of, Debtor's Assets based on, or related to, any such interest, or based on any actions the Debtor may take in its Chapter 11 Case.

**D.  ADDITIONAL DECREES.**

32.  The recitals and findings of facts set forth above are hereby incorporated as a part of this Order.

33.  As provided by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry. Notwithstanding Bankruptcy Rules 6004(h), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

34. The provisions of this Order are nonseverable and mutually dependent.

35. Nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the terms of this Order.

36. This Order shall be binding upon and inure to the benefit of the Debtor, CCR and each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members or agents, whether a signatory hereto or not, including, but not limited to, any subsequently appointed trustee (including without limitation a chapter 7 trustee).

37. This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Motion and to resolve any dispute concerning this Order, the Motion, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Motion and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Debtor's Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Debtor's Assets free and clear of all Liens, Claims Or Encumbrances of any kinds and nature whatsoever.

38. The division of this Order into sections or other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Order.

39. Entry of this Order is in the best interests of the Debtor, the Debtor's estate, its creditors, and other parties in interest.

40. If the escrow does not close as scheduled and the lienholders are not paid as provided, then within one (1) business day of the previously scheduled close of escrow CCR shall notify NDEP that the sale is cancelled and that CCR is withdrawing its application to transfer the NDEP Discharge Permit. CCR shall also provide a copy of the request to withdraw the application to counsel for the Debtor and for Carson City via email at the following email addresses: Kevin A. Darby, Esq., Debtor's counsel, kevin@darbylawpractice.com; Edmond "Buddy" Miller, Esq., Carson City's counsel, bmiller@buddymillerlaw.com.

41. In the event the sale is not consummated and is terminated for any reason, the Debtor shall have until September 18, 2015, to file a new motion to sell on any existing or new back-up offer or a plan of reorganization. Failure to do so will result in dismissal of this case.

IT IS SO ORDERED.

SUBMITTED BY:

DARBY LAW PRACTICE, LTD.

    */s/ Kevin A. Darby, Esq.*
By:_____
  KEVIN A. DARBY, ESQ.
  Counsel for Debtor

| APPROVED BY: | APPROVED BY: |
|---|---|
| */s/ Edmond "Buddy" Miller, Esq.* | /s/ *Amy N. Tirre, Esq.* |
| EDMOND "BUDDY" MILLER, ESQ. | AMY N. TIRRE, ESQ. |
| Counsel for Carson City | Counsel for GSR Investments, LLC |

# # #

In accordance with LR 9021, counsel submitting this document certifies as follows:

_____  The Court has waived the requirement of approval under LR 9021.

\_\_\_X\_\_\_  This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated on said order.

_____  I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

_____  No party appeared at the hearing or filed an objection to the motion.

                                            DARBY LAW PRACTICE, LTD.

                                            By: \_\_\_\_*/s/ Kevin A. Darby*_____
                                                KEVIN A. DARBY, ESQ.
                                                Attorney for Debtor and
                                                Debtor in Possession